(No. 25330.—

HELEN OSWALD KUHN, Appellant, *vs.* ANNIE BARTELS *et al.*
Appellees.

*Opinion filed June 14, 1940—Rehearing denied October 2, 1940.*

MILLER, GORHAM, WESCOTT & ADAMS, (AMOS C. MIL-
LER, EDWARD R. ADAMS, and HERBERT C. DEYOUNG, of
counsel,) for appellant.

McKINNEY, FOLONIE & GREAR, and WALTER J. SPENG-
LER, (HAYES McKINNEY, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The question involved in this case is whether the mar-
riage of Adolph A. Kuhn, subsequent to making his will,
worked a revocation of that will. The county court of
Cook county held that the will was thus revoked. The
circuit court, on appeal, also refused to probate the will.
As a freehold is involved, the appeal comes here direct.

The language of the will over which controversy has
arisen, and by which testator devised all of his property
in fee to appellant, Helen Oswald Kuhn, then Helen Os-
wald, is as follows: "To Miss Helen Oswald (my intended

wife) of the city of Chicago," etc. It appears from the record that at the time of execution of the will on June 1, 1894, invitations to the wedding of the testator and Helen Oswald had been sent out and they were married five days thereafter. No children were born of this union. Twelve years thereafter, appellant obtained a divorce from Kuhn. Kuhn died June 16, 1937, leaving a brother and a sister and other heirs, all but one of whom objected to the probate of the will. There is nothing in the record to indicate that Kuhn ever made a later will.

Appellees say that a proper construction of section 10 of the Descent act (Ill. Rev. Stat. 1939, chap. 39, par. 10) requires the conclusion that this will was revoked. The language of that section applicable here, is: "A marriage shall be deemed a revocation of a prior will." The construction and effect of this language has been before this court in prior cases, one of the earlier of which is *Ford* v. *Greenawalt*, 292 Ill. 121. The testator in that case, prior to his marriage, executed a will in which the following language was used: "In case I intermarry with Ruth Inscho, sister of my deceased wife, as I now contemplate doing, and she survive me, I bequeath to her" certain personal property. The testator at the time of making the will was a widower and he and Ruth Inscho were married some three and one-half months later. She survived him. This language of section 10 of the Descent act was there considered, and a review of certain common law rules and statutory provisions regarding the revocation of wills was there made. It was pointed out that the question is one of construction of the intention of the General Assembly and is: "Whether the General Assembly intended that a testator should be conclusively presumed to have revoked his will and that it no longer expresses his intention, when, by the terms of the will itself, a contrary intention appears and provision is made for the changed condition." The statute declaring that a subsequent marriage shall be "deemed a revocation

of a prior will," was there construed to mean that the act of the testator in entering into the new relation shall be considered and regarded as recalling, cancelling or setting aside his will. In effect and logic the *Greenawalt case* construes section 10 of the Descent act as raising a presumption, though not conclusive, that, by later marriage, the testator intended to revoke his will.

This construction was also placed upon the language of section 10 of the Descent act by the later cases of *Wood* v. *Corbin,* 296 Ill. 129, and *Gillmann* v. *Dressler,* 300 Ill. 175, where the circumstances, however, were held not to be sufficient clearly to show that the presumption as to intention to revoke was overcome by the language of the will. In the *Wood case* the testator did not mention an intended marriage and there was nothing in the will to indicate that he intended his will to stand. In the *Gillmann case* the language. of the will did not disclose any specific intention to marry and disclosed no one with whom marriage was contemplated at the time of making the will, but referred only to marriage as a future possibility, and it was held that such language was not sufficient to overcome the presumption of revocation. In the case before us the will shows that marriage to a specific person was contemplated, and it was, five days thereafter, performed, and that person was the beneficiary under the will.

Revocation is an act on the part of the testator. The statute does not, as was the case with the English statute, (1 Victorian, chap. 6, sec. 18,) declare that upon marriage the will shall be revoked, or .that marriage shall revoke a will, but that it shall be "deemed" or considered a revocation. In other words, that, in the absence of evidence in the will of a specific contrary intention, it will be considered that the testator intended to revoke his will. Such consideration cannot enter here. The will of Kuhn shows by its terms that it was not to be revoked but should remain his will after the contemplated marriage had taken place. It shows

that he recognized and provided for the changed condition and increased responsibility arising out of his marriage, and that he never made another will.

Counsel argue that this case differs from the *Greenawalt case* in that in the latter the bequest was conditioned not only upon the marriage but upon his intended wife surviving him, while, here, Helen Oswald would take even though they were not married, as the devise to her was outright. While a condition on which a devisee is to take may be said to affect the question whether such beneficiary would eventually take under the will, it in nowise affects the question whether it was the intention of the testator that his will remain in force and unrevoked by his marriage. The question, here, is whether the will stands, rather than the fulfillment of a condition on which a named beneficiary shall take. The fact that Helen Oswald would take if she did not marry Kuhn is no reason for saying she should not take if she did. There is here in contemplation, marriage to a specified person who is made beneficiary. This case, therefore, comes within the rule announced in the *Greenawalt case*. It follows that the circuit court erred in refusing probate of the will. This order is reversed and the cause remanded, with directions to probate the will of Adolph A. Kuhn.

*Reversed and remanded, with directions.*